IN THE UNITED STATES DISTRICT COURT
for the Southern District of Florida

ALLEN F. STEWART,  )
        Plaintiff,  )
  )
v.  )
  )
AIR LINE PILOTS ASSOCIATION  )
INTERNATIONAL (ALPA),  )    JURY TRIAL DEMANDED
  )
        Defendant.  )

## COMPLAINT FOR DAMAGES

Plaintiff, Allen F. Stewart ("Plaintiff") brings this action against Defendant Air Line Pilots Association, International ("ALPA", the "Union", or "Defendant"), and thereto states as follows:

### I.   Summary of Claims

1) Plaintiff, was an active 11 year Captain of Spirit Airlines ("Spirit" or the "Company") from November 29, 2000, to February 17, 2011, and brings this action against Defendant ALPA for five (5) individual claims of breach of duty of fair representation under the Railway Labor Act ("RLA"), 45 U.S.C. §§151-188, *et seq*.

2) ALPA — acting through its Spirit Airlines Master Executive Council #109, ("Spirit MEC" or "MEC") — was presented a request for resolution by Plaintiff of an issue silent in the parties' collective bargaining agreement ("CBA") that invoked the parties' fiduciary duties and obligations under RLA §152, First, to engage in mandatory dispute resolution.

3) Neither ALPA, the MEC, nor the Company engaged in statutorily or contractually required dispute resolution. The Union refused to require or demand that the Company treat with

1

it to work to resolve the issue; but allowed the Company to impose an unlawful past practice, and adverse employment action and the non-negotiated "guidelines" of its Employee Handbook in a manner not recognized by any existing precedent to prohibit a full and complete record of Plaintiff's Weingarten meetings. The Union later prosecuted Plaintiff's CBA Section 20 Grievance as a non-compliance complaint, however the issue never sustained threshold dispute resolution, because the Union did not engage the matter, or require or demand discussion from the Company.

4) Plaintiff was denied his right and privilege under RLA §153, First (i) as given effect by the CBA Section 20B to have an issue concerning rates of pay, rules, or working conditions authoritatively resolved between the Company and the Union and was ultimately terminated for acting in his own best interests, in place of his union that would not.

5) Plaintiff's termination was upheld by a System Board of Adjustment, which rendered a ruling the failed to uphold threshold dispute resolution and which granted absolute rulemaking authority to the Company. Plaintiff sought judicial review of the unfavorable arbitration award, and subsequently appealed to ALPA to attack the Award in that it also imposes additional non-negotiated provisions on the entire Spirit pilot group which could ultimately affect other carriers.

6) Plaintiff brings five (5) claims against ALPA alleging that ALPA's actions, from the onset to the present, were in violation of the basic tenets of collective bargaining representation, which prohibits a union from discriminatory, hostile and bad faith conduct, including neglecting the interests of a union employee or the union membership.

/ /

## II.     Jurisdiction

7)     This court has jurisdiction under 28 U.S.C. §§1331, 1332, and 1337 in that the acts complained of and Plaintiff's rights are governed by and arise under the RLA, and proceedings thereunder and before the National Mediation Board;

8)     Venue is appropriate in this court under 28 U.S.C. §1391(b) because (1) a substantial part of the events giving rise to Plaintiff's claims arose in this district, and (2) the Spirit MEC is headquartered, maintains offices, and does business in this judicial district;

9)     Plaintiff has standing under Railway Labor Act ("RLA") to maintain a private action for an alleged breach of duty of fair representation against ALPA, which has herein tolled the six-month statute of limitations (taken from Section 10(b) of the National Labor Relations Act, *Ramey v. Dist. 141 Int'l Ass'n of Machinists*, 378 F.3d 269, 277-78 (2d Cir. 2004)), because Plaintiff has: (1) timely pursued the contractual grievance procedure including subsequent judicial review under 45 U.S.C. §153(q), and has (2) made interim formal attempts to resolve the issue with ALPA. *Merritt v. International Ass'n of Machinists and Aerospace...*, WL 5784439, E.D.Mich.,2008;

10)    This Court has subject-matter and personal jurisdiction over the parties and claims within this Action.

## III.    Parties

11)    Plaintiff presently resides in Indiana, at 1600 S. High St., Bloomington, Indiana 47401-6169. From November, 29, 2000, to February, 17, 2011, Plaintiff was an active Spirit pilot and ALPA member in good standing.

12) At all times relevant, Defendant ALPA, with its national offices located at **1625 Massachusetts Ave NW, Washington, DC 20036**, was the certified collective bargaining representative under RLA, 45 U.S.C. §§151-188, *et seq*, for all active Spirit pilots, including Plaintiff. In addition to its national office, ALPA has established a Master Executive Council for each airline at which it represents employees. The Master Executive Council for each airline serves as the coordinating council for ALPA members at that airline. The Spirit MEC has offices at the Spirit Airlines corporate office located at **2800 Executive Way, Miramar, Florida, 33025**. Under ALPA's constitution and bylaws, Spirit pilots elect the Spirit MEC to serve as their representative body within ALPA of which Attorney Arthur Luby was the legal liaison between the two entities. At all times relevant, the elected Spirit MEC chairman was Captain Sean Creed. The Spirit MEC does not have its own constitution or bylaws, but operates as an agent of and on those matters delegated to it by ALPA. ALPA exercised, and continues to exercise, the improper acts complained of herein by authorizing actions by the Spirit MEC, which operates within this judicial district.

13) Though available, Plaintiff brings no specific cause of action against Spirit Airlines for breach of Contract because that claim will be effectively addressed and remedied in the Petition to Vacate Arbitration Award, case no. 12-60323.

### IV.   Factual Allegations

14) ALPA and the Spirit MEC, is a labor union subject to the provisions of the RLA that represents approximately 55,000 pilots at almost fifty carriers, including Spirit Airlines, and therefore represented Plaintiff, and functioned, and continues to function, as the bargaining

4

representative for pilots employed by Spirit. At all times relevant, Plaintiff paid dues assessed by ALPA in a *pro rata* percentage commensurate with his pay.

15) A "Weingarten meeting" (colloquially called an "NOI" at Spirit Airlines from the Notice of Investigation issued by the Company) is a company-level investigatory meeting held between the Company and an employee that has a reasonable belief that disciplinary action may result. The term is derived from the case *N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, U.S. 1975, which guarantees the unionized where a union has not been certified.

16) CBA Section 19, which encompasses Weingarten meetings at Spirit, defines all aspects of the discipline and discharge procedure and defines the protocol and rights of the Company and the employee during such meetings. CBA Section 19, and all other sections, also contains the implied covenant of good faith and fair dealing.

17) CBA Section 19 is silent as to what method or manner, if any, a full and complete factual record can be made of a pilot's Weingarten meeting by the Company or the employee if one is desired to preserve and to be able to present evidence during any subsequent arbitration proceedings as guaranteed under RLA, §157, Third(b). Whether a record can be made of a pilot's Weingarten meeting, and by what method that record can be made, was deemed a "minor dispute" by this Court in the related case *Allen F. Stewart v Spirit Airlines*, 12-60284-CIV-SCOLA;

18) In the case *Pennsylvania Telephone Guild*, 277 NLRB 501, 120 LRRM Wells 57 (1985), the National Labor Relations Board ruled that the case *N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, U.S. 1975, does not forbid an employer or an employee from tape recording a Weingarten meeting. But, the Board held that if doing so represents a proposed new policy,

5

either side can object on the grounds that they did not receive prior notice or the opportunity to resolve the issue. No court has determined that one side has the unilateral absolute rulemaking authority to prohibit the other from creating a full and complete record of the meeting.

19) On or about December 17, 2010, in preparation to attend a Weingarten meeting, Plaintiff sought to obtain certain fundamental investigatory due process conditions due to extraordinary inaccuracies found in previously terminated pilot's pre-arbitral records: specifically, Plaintiff sought to institute the new policy of creating full and complete permanent records of all future pilot Weingarten meetings. Plaintiff gave written notice of his intent to electronically record the upcoming meeting to the Chief Pilot and on December 23, 2010, invoked CBA Section 20B, "Grievances other than Discipline", in wiring for resolution of the issue (the "CBA Section 20B Grievance") to the Union and the Company. The CBA Section 20B Grievance was faxed to the Company and sent by US mail to the Union at its office at the corporate headquarters.

20) Plaintiff's statutory right to seek redress of the CBA Section 20B Grievance is granted under RLA §153, First (i) which commands that disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions be handled in the "usual manner."

21) The Chief Pilot testified under oath that upon receiving the request, he "conferred with both his immediate supervisor [Joe Houghton] and Spirit's law Department and then solicited the presence at the meeting of Senior Manager Employee Relations, June Balwant, and Manager of Labor Relations and Flight Operations, Lucy Singleton." (Arbitration Award, p.8) No member

of management made any effort to settle the dispute with the Union, nor did the Union demand that the issue be discussed. (Arbitration Award, p.8, "Spirit made no reply.")

22) At the time, Plaintiff was unaware of what the "usual manner" was to resolve such grievances, but from December 23, 2010 to January 5, 2011, made several attempts to contact MEC Chairman Sean Creed to discuss the Union and Company's position, to no avail. Creed did not return any of Plaintiff's phone calls or emails. Defendant ALPA did nothing.

23) On January 5, 2011, Plaintiff arrived at the *Weingarten* meeting prepared to electronically record it. In attendance was: the Chief Pilot, Richard Dancaster; MEC Captain Rep., Frank Hann; Company Human Resources Rep, Lucy Singleton; and Legal Department Rep., June Balwant whose purpose, according to the Chief Pilot was to take hand-written transcription to document the meeting.

24) A discussion ensued during the meeting, as to whether a recording could be made. The Chief Pilot held that Plaintiff required approval from the Company. Plaintiff and Hann endeavored to "barter a deal" with the Chief Pilot to resolve the issue. Days later, the Chief Pilot learned that Plaintiff's full and complete electronic recording could implicate him in violating an oral confidentiality agreement made during the meeting. The Chief Pilot alleged that he had specifically ordered, instructed, and directed Plaintiff not to record the meeting; and summoned Plaintiff to a second February 10, 2011, *Weingarten* meeting charging Plaintiff with insubordination, failure to follow company directives and the possible violation of Florida's Wiretapping Statute.

25) On February 2, 2011, in an email to the Chief Pilot, Plaintiff reverberated the Union's company-wide declaration that, "The provisions of the Employee Handbook have no basis

7

during a CBA sanctioned event." The Company's Employee Handbook contains a non-binding clause which disavows any contractual link or obligation to any employee. It expressly states,

> "Nothing contained in this Employee Handbook shall be construed as constituting a contract or as creating any contractual obligations on the part of the Company or any employee. **Instead, the rules, policies, and standards of the Employee Handbook are guidelines subject to modification, deletion, or addition at any time.** Employees will be informed of any such changes via communication from the Human Resources Department on the Company's Employee Self Service (ESS) System. Employees are required to check ESS frequently for company information and are required to check ESS frequently for company information and are required to read revisions to the Employee Handbook. Since the Company reserves the right to make modification to the Handbook, all employees are hereby advised that the only valid version f the Employee Handbook is the Employee Handbook located on ESS. If an Employee chooses to print a copy of the Employee Handbook, it is the Employee's responsibility o check ESS frequently to ensure that the Employee has a copy of the valid version of the Employee Handbook."

26) Plaintiff, and all other Spirit Airlines pilots, were told collectively by the Union leadership (per instructions handed down from ALPA liaison attorney Arthur Luby) to sign a statement saying they had received the Employee Handbook, but were at the same time told collectively, at an apparent detriment to the pilot group, that the Employee Handbook's "guidelines" did not apply to pilots; and on that misrepresentation Plaintiff took no concern to make himself aware of any "guidelines" that may apply to him and proceeded to record his Weingarten meetings on the misrepresentations under no fear of reprisal from any known or unknown strictures within the Employee Handbook, to include it's "Electronic Recording" policy.

27) From January 5, 2011 to February 10, 2011 Plaintiff again made efforts to contact Union Chairman Sean Creed to no avail, and was left without any means to exhaust the contractual remedies by the Union's refusal to demand or require the Company to exert any effort to resolve

8

the matter, which left Plaintiff without any adequate remedy; leaving Plaintiff forced to either (1) abandon his CBA Section 20B Grievance or (2) to attempt to deal with the Company himself.

28) On February 9, 2011 Plaintiff realized he was without any remedy or opportunity to settle the dispute and filed a private action (case no 12-60284) seeking, *inter alia*, injunctive relief to compel the Company's compliance in fulfilling its fiduciary duty under RLA S152, First to "exert every reasonable effort to settle the dispute" in that the Union would do nothing to compel same.

29) Having run out of remedies, during the February 10, 2011, Weingarten meeting, Plaintiff used the *Dragon Naturally Speaking* computer dictation program to attempt to make a full and complete record of the meeting, because the Company had unilaterally imposed an adverse employment action (*a.k.a.,* an "unfair labor practice" under the National Labor Relations Act) against the union by unilaterally prohibiting any and all methods that would create a full and complete record of the meeting and unilaterally dictating how the Union could preserve the facts through an unlawful "past practice",

> Vice President of Operations, Joe Houghton later testified in Interrogatory responses in <u>Stewart v. Spirit Airlines</u>, case no 12-60284, that electronic recording was not allowed because it was not permitted by the CBA and because it was the Company's "past practice" to use hand-written notes and the Chief Pilot's personal recollection to preserve the factual record of pilot Weingarten meetings. Houghton said that the Company's "past practice" was sufficient. All documents related to the case were forwarded via email to the MEC Grievance Chairman, Vince Brocklebank, yet Defendant ALPA did nothing. The Union took no proactive steps to oppose this action or otherwise attempt to tender a proposal that would create a full and complete record. Defendant ALPA did nothing.

9

30)    Lucy Singleton declared during the meeting that the Chief Pilot had a right to have her appear as a witness for him, likened to Plaintiffs *Weingarten* right to have his Union Steward, while the Chief Pilot declared the Company's right to allow "scribes" to make a record of the meeting. [Tr. 2-10-11, p. 43 at 3-16] When asked point-blank why he (the Chief Pilot) refused to allow the meeting to be recorded, the Chief Pilot refused to answer the question. [*Id.* p.53 at 11] Hann questioned how the issue was going to be resolved if the Company could unilaterally stand at impasse and prohibit recording using its non-negotiated policies. [*Id.* p.37 at 18]

31)    On February 17, 2011, Plaintiff was terminated from his employment for recording his Weingarten meetings. The dispute never sustained threshold (company-level) dispute resolution as required under RLA §152, First, because (1) the Company refused to discuss the issue and (2) the Union refused to demand or require discussion.

32)    Three days later, on February 20, 2011, Union Rep. Frank Hann filed a "non-compliance complaint" ("NCC") concerning *Weingarten* meeting records, that was immediately dismissed by direction of ALPA liaison attorney Arthur Luby, not for having no merit, but solely due to language used by Hann which purported the issue to be a "major dispute" as the term is defined by the RLA. The NCC was instantly re-filed by Plaintiff alleging that the Company never responded to the grievance but, instead, stood at impasse in violation of CBA Section 20. The NCC was found to be meritorious and (as of this writing) remains pending arbitration before the National Mediation Board ("NMB") — yet never sustained the threshold dispute resolution process as required by RLA, §152, First and CBA Section 20.

33)    ALPA instantly filed a grievance on Plaintiff's behalf alleging that Plaintiff's termination was without "just cause" under the CBA.

10

**34)** Between February 17, 2011 and Plaintiff's arbitration hearings (held October 11th, 12th and the 25th of 2011), Plaintiff repeatedly questioned why the Union did not require the Company to attempt to resolve the dispute. Plaintiff emailed the Union leadership questioning what was/is supposed to happen (the "usual manner" under RLA §153, First(i)) when a pilot submits a Section 20B issue to the Union and the Company. No response was received. Defendant ALPA did nothing.

**35)** During the arbitration hearings held October 11th, 12th and the 25th of 2011, MEC Chairman Sean Creed restated that the Employee Handbook did not apply to pilots in sworn testimony to the System Board saying he had never read the Employee Handbook. Creed also demonstrated his lack of awareness of the provisions of CBA Section 19 testifying that Spirit pilots had the contractual right to take hand-written notes during the meetings. Creed was handed the CBA and could not find any such provision.

**36)** After the October 11th hearing, ALPA attorney Art Luby was dismissed by Plaintiff due to his grossly inept handling of the direct examination of company witnesses. In an email to ALPA Director of Representation Bruce York, Plaintiff criticized Luby's arbitrary lack of preparedness and professionalism in waiting until the very night before arbitration to prepare hand-written questions, his failure to question witnesses or to prepare himself by reading the transcripts of the two Weingarten meetings or the emails sent between the parties involving the dispute. Plaintiff alleged that arbitration had been irrevocably damaged by Luby's representation. Attorneys Kalfus and Lobsenz proceeded with the hearings, but were substantially prejudiced by Luby's ineptness despite their efforts.

11

37) On February 24, 2012 in a finalized "Arbitration Award" rendered by the System Board of Adjustment, Arbitrator James E Conway held that (1) Plaintiff had been wrongly advised by his Union; and (2) that the Company had absolute power, or "plenary" rulemaking rights under the Retained Rights Management Clause to unilaterally create and enforce its own rules or to impose its Employee Handbook's "guidelines" toward Section 19 Weingarten meetings, or to unilaterally prohibit recordings of Weingarten meetings with no discussion or approval with the Union.

38) In an email to ALPA, Plaintiff released ALPA as legal representatives in furtherance of the "just cause" arbitration, at the same time thanking Attorney Kalfus and Lobzens for their efforts in the face of Attorney Luby's gross ineptness. Plaintiff instantly filed a *Petition to Vacate Arbitration Award* under RLA §153(q) (case no 12-60323) alleging that the Arbitrator had exceeded his jurisdiction on several grounds. From the date of filing to present, ongoing discussions between Plaintiff, the MEC and ALPA continued as Plaintiff sought to determine why his CBA Section 20B Grievance was arbitrarily neglected. ALPA's Director of Representation Bruce York, indicated ALPA's willingness to assist in supporting Plaintiff's claims to have the unfavorable Arbitration Award overturned, but refused to respond to matters concerning the CBA Section 20B Grievance.

39) On April 18, 2013, ALPA's Director of Representation indicated that Plaintiff's pending NCC was going to be taken to Arbitration through the NMB though having never sustained one discernible iota of threshold dispute resolution as required by RLA §152, First.

40) On or about April 24, 2013, Plaintiff demanded that ALPA intervene and oppose and defend the following claims within the Arbitration Award that adversely affect all Spirit pilots:

12

A. **That the Arbitrator (1) acted beyond the scope of his authority; (2) in excess of his jurisdiction; and/or (3) failed to interpret the CBA by:**

   i. encroaching into the realm of the exclusive jurisdiction of the NMB by rendering an opinion concerning the merits of a "minor dispute" that was pending arbitration between Spirit and ALPA;

   ii. failing to interpret the implied contractual covenants of good faith and fair dealing to presume that the Company can unilaterally prohibit a proposed new policy or otherwise unilaterally impose rules and policy changes concerning disciplinary rules and conditions, with no discussion or approval by the Union;

   iii. granting additional non-negotiated contractual provisions, *visa vie*, expanding Spirit's "Retained Rights" Clause to grant the Company the absolute undeniable reservation of unfettered managerial rulemaking authority ("plenary" terms) by construing the Clause in such a way to (1) grant absolute control over matters, or "minor disputes," that require mandatory dispute resolution under RLA §152, First and thereafter arbitration, such as wages, rules, disciplinary rules, conditions, protocol, etc. with no discussion with or approval by the Union; (2) allow Spirit the unilateral right to effectively amend CBA Section 19 *Weingarten* meetings by selectively imposing the non-negotiated "guidelines" of its Employee Handbook at-will, chiefly its "Electronic Recording" policy, in a manner inconsistent with historic usage of such provision, with no discussion with or approval by the Union; (3) allow Spirit to impose unilateral prohibitions or unlawful "past practices" against proposed new policies (an unlawful employment action) with no discussion with or approval by the Union;

13

    iv.    rendering conclusory rulings concerning the respective duties and obligations of the parties in furtherance of a mandatory arbitral issue, and superimposing his own notions of the "usual manner" in which minor disputes should be settled between the parties, using his own personal opinions, feelings or some other undisclosed body of thought or authority outside the confines of the CBA;

    v.    being non-compliant with the Act, by permissibly allowing Spirit to refuse to assert its contractual duties to bargain in good faith;

B.    The Arbitrator denied Plaintiff, and other future pilots, fundamental due process, by failing to uphold the "grievance other than discipline" or method-of-modification contractual protocol found in CBA Section 20;

C.    The Award is non-compliant with long-standing public policy under the Act, by permissibly allowing the Company to (1) selectively determine when, or if, they will assert their substantive fiduciary legal duties and obligations under RLA §152, First, to settle disputes involving compulsory arbitration issues; (2) to use unlawful "past practices" against the Union; and (3) to selectively impose unilateral prohibitions (a.k.a, "adverse employment actions").

41)    On April 18, 2013, Plaintiff discovered, in the exercise of reasonable diligence, the "last action" that formed the basis of these claims. ALPA refused to attack claims within the Arbitrator's ruling that effect Plaintiff and the entire union membership misrepresenting the case *Johnson v. Express One, Int'l*, 944 F.2d 247, 249-253 (5th Cir. 1991) to presume that Spirit Airlines pilots have no Weingarten rights under the RLA; ALPA's Director of Representation, Bruce York, made it clear that ALPA's decision to ignore the issues within the Award, as was the manner in which ALPA dealt with Plaintiff's CBA Section 20 Grievance, was entirely arbitrary and in bad faith.

**42)**   The Award is tainted by ALPA's failure to demand and require the Company, and the System Board to compel discussions over matters that require mandatory dispute resolution.

### V.   Cause(s) of Action

### Breach of Duty of Fair Representation
### Under Railway Labor Act, 45 U.S.C. §152
*(Counts #1 thru #5)*

**43)**   Plaintiff re-alleges and incorporates by reference all those facts and allegations in paragraphs 1 through 42 above and further alleges:

**44)**   Plaintiff asserts herein the following claims against ALPA for breach of duty of fair representation under the RLA, alleging that:

> **COUNT #1:** ALPA arbitrarily and in bad faith, wrongfully brought about Plaintiff's termination and tainted Plaintiff's arbitration proceedings, by disseminating misleading statements and information to the entire union about the lawful and contractual affectivity of the Company's Employee Handbook's, which were reasonably relied on by Plaintiff and the entire union;

> **COUNT #2:** ALPA arbitrarily and in bad faith, wrongfully brought about Plaintiff's termination and tainted Plaintiff's arbitration proceedings, by arbitrarily ignoring a meritorious grievance brought under CBA Section 20B concerning CBA Section 19 Weingarten meeting records, an issue that requires mandatory threshold dispute resolution under RLA §152, First; ALPA otherwise acted in a perfunctory manner by failing to assert its duty to act in Plaintiff's best interests and on his behalf by requiring and/or demanding that the Company treat with it to attempt to resolve the grievance but simply allowed it to timeout (presumably under CBA Section 20E) and default to the arbitration process;

> **COUNT #3:** ALPA arbitrarily and in bad faith, wrongfully brought about Plaintiff's termination and tainted Plaintiff's arbitration proceedings, by taking no defensive position or action against the Company's imposition of an unlawful "past practice" during CBA Section 19 Weingarten meetings;

> **COUNT #4:** ALPA arbitrarily and in bad faith, wrongfully brought about Plaintiff's termination and tainted Plaintiff's arbitration proceedings, by taking no defensive position or action against the Company's unlawful unilateral prohibition against all methods that would create a full and complete record of Plaintiff's and other pilot's CBA Section 19 Weingarten meetings;

15

**COUNT #5:** ALPA arbitrarily and in bad faith, and with no explanation, refuses to prosecute an arbitration award that contains additional non-negotiated provisions and restrictions that negatively impact Plaintiff and all Spirit pilots;

**45)** Under the RLA, ALPA, as the exclusive bargaining agent of Spirit's pilots, owed to Plaintiff and all Spirit pilots, a duty of fair representation. This duty encompasses the obligation to serve the interests of Plaintiff and all Spirit pilots without hostility or discrimination toward any, and to exercise its discretion with complete loyalty, good faith, and honesty and to avoid arbitrary conduct;

**46)** The duty of fair representation extends to the Union's conduct in negotiating collective bargaining agreements as well as in pursuing meritorious Section 20B "Grievances other than Discipline" on behalf of individual or groups of employees;

**47)** Misleading statements made by union officials to the entire union about the lawful and contractual affectivity of the Employee Handbook, which are reasonably relied on by the entire union, and were reasonably relied on by Plaintiff, is a grossly negligent and extraordinarily bad faith duty of representation violation that extends much, much farther than "mere negligence, poor judgment, or ineptitude";

**48)** The Company violated the CBA, its substantive duties under RLA §152, First by refusing to hold meetings or otherwise work with the union to settle the issue, and imposed unlawful "past practices' and other prohibitive directives, which cause a corresponding breach in ALPA's duty of fair representation. In an April 18, 2013, proposed affidavit submitted by ALPA, ALPA acknowledges Plaintiff's claim that the Company did not have the unilateral right to prohibit recording as a proposed new policy nor could it unilaterally impose restrictions during Weingarten meetings that could adversely affect the outcome of a pilot's arbitration. Despite

Plaintiff's prompt requests for guidance and direction from ALPA, these claims were arbitrarily neglected and went opposed by ALPA until after Plaintiff had been terminated. ALPA simply did nothing and left Plaintiff to deal with the issue himself;

49) A union breaches its duty of fair representation if, *inter alia*, it intentionally causes harm to or neglects the interests of an employee or discriminates against an employee or employee group, or fails to make reasonable decisions on its members' behalf;

50) Plaintiff reserves the right to amend to seek injunctive relief to enjoin Defendant's compliance with the RLA and from allowing certain actions by the Company that violate the RLA and its duties owed to Plaintiff and other Spirit pilots;

51) Elected ALPA Union representatives act against the best interest of the Association if they fail to represent, or arrange for representation of their constituents. (ALPA Constitution, Art. I, §14.) ALPA's rules of membership expressly prohibit any member from "doing any act contrary to the best interests of the Association or its members." (*Id.*, Art. VIII, § 1.A(10)).

52) Defendant ALPA, as exclusive bargaining representative of employees in bargaining unit had a statutory duty to represent and act on behalf of Plaintiff, and all Spirit pilots, both in its collective bargaining with the Company, in the enforcement of resulting CBA and to defend and attack unlawful actions taken by the Company and meritorious CBA Section 20B grievances, and thus did expose Plaintiff to peril by not fulfilling this duty;

53) Defendant ALPA has a fiduciary duty to represent fairly Plaintiff and all of its members, i.e., exercise of granted power to act on behalf of others involves assumption toward them of duty to exercise power to act in their interest and behalf; ALPA's duty of fair representation

applies to all union activity, including contract negotiation; ALPA breaches its duty of fair representation if its actions are either arbitrary, discriminatory, or in bad faith; ALPA is responsible to, and owes complete loyalty to, interests of all whom it represents;

54) Defendant ALPA's statutory duty, includes the obligation to serve interests of all members, including Plaintiff, without hostility or discrimination and to exercise its discretion with complete good faith and honestly, and to avoid arbitrary conduct;

55) In violation of ALPA's Constitution and By-Laws, ALPA has, and has permitted, the Spirit MEC to usurp its dispute resolution authority, and has permitted and actively encouraged the Spirit MEC to (1) allow CBA Section 20 grievances to timeout and default to arbitration; and (2) allow the Company to impose unilateral rules and restrictions that adversely affect Spirit pilots; Plaintiffs further alleges that by denying Spirit pilots the right to have their CBA Section 20 disputes attempted to be resolved and/or negotiated, ALPA violated its Constitution and By-Laws, despite that it later accepted and processed Plaintiff's NCC to the NMB;

56) ALPA acted arbitrarily, irrationally, with no resistance, and without cause, by allowing the Company to: (1) impose an unlawful "past practice" and (2) make and/or dictate unilateral policy changes and prohibitions during Weingarten meetings without union approval, or the required notice or representation to the Union membership before taking effect;

57) Precisely why ALPA did not process the CBA Section 20B Grievance is unknown. There is nothing to indicate that Defendant ALPA carried Plaintiff's CBA Section 20B Grievance through the required dispute resolution process, nor did ALPA reasonably attempt to bargain, settle, resolve the dispute, or demand or require the Company to treat the disputed issue of Weingarten meetings records; but instead proceeded arbitrarily, unreasonably, without cause,

18

and in a perfunctory fashion allowing it to timeout and default to arbitration (presumably under CBA Section 20E), in (1) violation of the RLA, (2) to the detriment of Plaintiff (and all other pilots) and (3) arbitrarily in favor of the Company;

58) As of April 2013, ALPA refuses to prosecute the Award in extraordinarily giving absolutely no reason despite the fact that it adversely affects the entire union. ALPAs actions are in deplorably bad faith, arbitrary and capricious, and far outside the range of reasonableness expected of any union pilot that relies on his or her union to protect the pilot group; ALPA's refusal to attack the Award on the behalf of Spirit pilots has caused, and will cause a future disparate impact on Plaintiff and those Spirit pilots that may seek to take issues before the Company pursuant to RLA §153, First (i) as implemented by CBA Section 20B and whom are opposed by unlawful "past practices", adverse employment actions or unilateral prohibitions and should expect to receive no discussion, assistance or opposition by the Union;

59) There is substantial assurance that a repeated violation will occur as interim events up to April 18, 2013, have demonstrated ALPA's utter lack of concern for demanding threshold dispute resolution from the Company;

60) A reasonable jury should find that ALPA exerted absolutely no effort whatsoever to demand or require the Company to settle the dispute, to the detriment of Plaintiff; and that the arbitration proceedings were indelibly tainted by ALPA's failure to require and demand that the Company work to resolve the dispute, which made it appear that Plaintiff was endeavoring to bargain the matter himself in place of the union. This breach of duty intimately contributed to the erroneous outcome of the contractual arbitration proceedings;

61) As a direct and proximate result of ALPA's arbitrary and bad faith failure to process and represent Plaintiff's CBA Section 20B Grievance and oppose the unlawful acts taken against Plaintiff by the Company, Plaintiff was damaged and has suffered a loss greater than can be fully known at this time; including having been made to endure serious and extreme financial losses, including back pay, front pay, lost benefits, and a decrease in matching retirement funds.

### VI. Prayer for Relief

**WHEREFORE**, Plaintiff prays that the Court and or the jury render Judgment in its favor and grant the following relief:

A. Award Plaintiff compensatory damages in an amount of USD $250,000 or other greater amount to be determined by jury to include pre and post judgment interest;

B. Award Plaintiff his costs, fees and expenses; and,

C. Such other and further relief as is just, proper and appropriate.

### VII. Demand for Jury Trial

Plaintiff hereby demands a jury trial on all issues so triable.

RESPECTFULLY SUBMITTED on this, the 15th day of May, 2013:

_____
**Allen F. Stewart**
1600 S. High St
Bloomington, IN 47401
Tel: 347-868-1175
Email: AllenFrederickStewart@gmail.com